<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DEALIN L., | Civil Action No. 20-9320 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | December 2, 2021 |
| Defendant. | |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Dealin L.'s ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Myriam C. Fernandez Rice's ("ALJ Rice" or "ALJ") denial of his claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction according to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that substantial credible evidence supports ALJ Rice's factual findings and her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

1

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On August 22, 2016, Plaintiff applied for DIB and SSI, alleging disability beginning August 17, 2015, due to fibromyalgia and anxiety/depression. (Administrative Record [hereinafter R.] 221-34, 150-55.) Plaintiff's application was denied initially on January 12, 2017 and again on reconsideration on May 24, 2017. (R. 13, 137-42, 150-55.) On July 24, 2017, Plaintiff requested a hearing and on January 15, 2019, Plaintiff, along with counsel, appeared and testified at an administrative hearing before ALJ Rice.[1] (R. 13, 157-61, 70-88.) Vocational Expert Eric Dennison, EdD ("VE Dennison") also testified. (R. 70-88.) On March 25, 2019, ALJ Rice issued a written opinion, concluding that Plaintiff was not disabled under §§ 216(i), 223(d) and 1614(a)(3)(A) of the Act from the alleged onset of disability through the date of ALJ Rice's decision.[2] (R. 10-27.) Plaintiff's request that the Appeals Council review ALJ Rice's decision was denied on June 1, 2020, making the ALJ's decision the final decision of the Commissioner. (R. 1-7, 216-20.) Plaintiff now requests that this Court reverse the Commissioner's decision.

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was born on December 1, 1967 and was fifty-one years old at the time of ALJ Rice's 2019 decision. (R. 73, 75.) Plaintiff earned a high school degree and previously held jobs

---

[1] The hearing was held remotely, with Plaintiff and his counsel appearing in Newark and ALJ Rice presiding from Albuquerque, New Mexico. (R. 13.)

[2] Plaintiff's earnings record illustrates that he had acquired sufficient quarters of coverage to remain insured through December 31, 2021. (R. 15, Ex. 8D & 11D.) Therefore, Plaintiff must establish disability on or before that date to be entitled to disability insurance benefits. (*Id.*)

2

as a make-up artist.  (R. 73, 75.)  He was last employed as a counter manager/make-up artist at Saks Fifth Avenue and left that position on August 17, 2015.  (R. 75-76.)

**2. Medical History**

Treatment for Physical Complaints

Plaintiff was initially diagnosed with fibromyalgia in or about 2006,[3] although he continued working until his alleged onset date of August 17, 2015.  (R. 75, 399.)  Beginning in 2011 and continuing through 2016, Plaintiff sought treatment for severe pain and fatigue from Evan Leibowitz, M.D. ("Dr. Leibowitz"), a rheumatologist.  (R. 340-90.)  Plaintiff reported that he was unable to sit, stand or drive for prolonged periods.  (R. 381.)  Dr. Leibowitz diagnosed Plaintiff with fibromyalgia and recommended that Plaintiff continue his existing medication regime which included Cymbalta, Valium, and opioids and get more exercise and sleep.  (R. 369-70, 381.)

In March 2016, Plaintiff began seeing Mansoora Chaudry, M.D. ("Dr. Chaudry"), who diagnosed Plaintiff with fibromyalgia, chronic pain, and depression and prescribed medication including Oxycontin, Oxycodone, and Valium.  (R. 437, 459-474.)  Dr. Chaudry described Plaintiff as situationally depressed and anxious but exhibiting mostly appropriate behavior and normal affect.  (*Id*.)  Dr. Chaudry completed a Fibromyalgia Medical Source Statement on January 3, 2019, in which she opined that Plaintiff's condition rendered him "unable to work" because he cannot sit or stand for long periods.  (R. 544-549.)  Dr. Chaudry had reached a similar conclusion

---

[3] The record does not contain any treatment notes prior to 2011 but does contain an incomplete patient intake form from January 9, 2006 for Dr. Mansoora Chaudry ("Dr. Chaudry"), which suggests that Plaintiff first saw Dr. Chaudry at that time.  However, there are no treatment notes from Dr. Chaudry until March 2, 2016, at which time she noted that Plaintiff "is in my office after close to 3 years. His last visit 4-11-13." (R. 437.)

3

in Examination reports she completed for the New Jersey Department of Welfare in July 2017 and July 2018.  (R. 451-52, 457-58.)

Dyana Aldea, M.D. ("Dr. Aldea") performed a consultative orthopedic examination in December 2016.  (R. 399-401.)  At that time, Plaintiff complained of neck and back pain as well as depression "due to his father's recent death."  (R. 400.)  Dr. Aldea found that Plaintiff suffered from restricted range of motion of the cervical spine but had full range of motion in all his extremities and normal sensation and muscle tone.  (*Id.*)  Dr. Aldea opined that Plaintiff could walk and stand for reasonable periods of time and, although Plaintiff had begun using a cane, it was not medically necessary.  (R. 400, 404.)

In July and August 2018, Plaintiff had two appointments with Anil Kapoor, M.D. ("Dr. Kapoor") and reported that his fibromyalgia was "well controlled."  (R. 499-501.)  Dr. Kapoor treated Plaintiff for suspected inflammatory polyarthritis and prescribed medication, including hydroxychloroquine and steroids.  (R. 499-500.)

Treatment for Psychological Complaints

Plaintiff began seeing Rita Ferrara, MSW ("Ms. Ferrara") in August 2015 for anxiety and depression.  (R. 408.)  Ms. Ferrara completed a psychiatric report in November 2016, noting that she saw Plaintiff every other week.  (R. 392.)[4]  Although Ms. Ferrara reported that Plaintiff had poor memory and concentration and a depressed mood, he exhibited normal speech and judgment.  (R. 393-94.)  Ms. Ferrara opined that Plaintiff had problems with concentration and persistence but no limitations with understanding, memory, or social interaction.  (R. 395.)  Plaintiff continued therapy with Benjamin Steinberg, Psy.D. ("Dr. Steinberg") in mid-2017.  (R. 409-17.)

---

[4] In December 2016, Victoria Miller, Ph.D. conducted a consultive psychiatric evaluation at the state agency's request.  (R. 405-07.)

4

Plaintiff began seeing Anthony Rudo, LPC ("Mr. Rudo") for psychological counseling at St. Clare's Hospital on December 3, 2018. (R. 39-40, 47-48, 59-63, 67.) Mr. Rudo diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and panic disorder, but noted that Plaintiff exhibited normal behavior and speech, presented appropriately, exhibited logical thought and calm mood, and denied having any suicidal ideation, intent, or plan. (*Id*.) Plaintiff complained of tension with his family and anxiety which was exacerbated by his living situation, but was working toward finding alternative housing and, over time, reported a reduction in his depression and stressors at home. (R. 40.)

Plaintiff also received antidepressant medication and psychiatric care from Michael Krysko, M.D. ("Dr. Krysko"), who treated Plaintiff on December 13, 2018 and January 8, 2019. (R. 51-56.) During these two sessions, Dr. Krysko noted that Plaintiff exhibited normal behavior, speech, and appearance and reported doing well. (R. 52.) Plaintiff was initially compliant with his medications and remained stable despite later ceasing to take them. (R. 56.)

### 3. Hearing Testimony

ALJ Rice conducted a hearing on January 15, 2019, during which Plaintiff testified about his education, prior employment, medical conditions, treatment, and daily activities. (R. 75-82.) In his testimony, Plaintiff indicated that his fibromyalgia "got worse and worse and worse" between 2006 and 2015, when he ceased working. (R. 75-76.) Plaintiff also testified that he suffered from "severe depressive disorder" and panic attacks. (R. 76, 82.) Although he once attempted to go back to work, Plaintiff testified that his back and hip pain prevented him from doing so. (*Id.*) Plaintiff testified that he "often" uses a cane, although it is not prescribed, and is able to drive for limited periods. (R. 78.) Despite his pain, Plaintiff stated that he is able to attend doctor and therapy appointments, do his own laundry, bathe and dress himself, take medications,

and prepare meals.  (R. 79, 81.)  Plaintiff relies entirely on welfare benefits and family assistance for financial support.  (R. 77.)  VE Dennison also testified, concluding that jobs existed in the economy that an individual with Plaintiff's limitations could perform, such as garment sorter, office helper, and marker. (R. 84.)

## II.   LEGAL STANDARD

### A.  Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would

have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**B. The Five-Step Disability Test**

42 U.S.C. § 1382 governs a claimant's eligibility for social security benefits. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity due to any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable], considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . .." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, App. 1, 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§

8

404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant can do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational

factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III. DISCUSSION

In her decision dated March 25, 2019, ALJ Rice correctly applied the five-step disability test before determining that Plaintiff was not disabled.  (R. 15-27.)  The ALJ's findings are supported by substantial credible evidence and she appropriately considered all of Plaintiff's medically supported complaints as shown by his consultative visits and limited medical treatment.

At step one, ALJ Rice determined that Plaintiff did not engage in substantial gainful activity as of his alleged onset date. (R. 15 (giving Plaintiff the benefit of the doubt that he did not engage in substantial gainful activity as of August 17, 2015, despite having earned $6,700.00 at the end of 2016); 254-55.); *see also* 20 C.F.R. §§ 404.1571 *et seq*.  At step two, ALJ Rice found that Plaintiff suffered from fibromyalgia and degenerative disc disease.  (R. 16); *see also* 20 C.F.R. § 404.1520(c).[5]  The severity of Plaintiff's impairments warranted proceeding to the next step of the sequential evaluation process.

At step three, however, ALJ Rice found that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).  (R. 20.)  In making this determination, ALJ Rice noted that Plaintiff is "able to ambulate effectively and perform fine and gross movements effectively" and that Plaintiff has no "evidence of nerve root compression." (*Id.*)

Before undergoing the analysis in step four, ALJ Rice followed the proper two-step process to determine Plaintiff's RFC.  (R. 20-25.)  At step one, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms.  (R. 21.)

---

[5] ALJ Rice also appropriately found that any other impairments "are non-severe or not medically determinable . . ." (R. 16.)

10

However, at step two, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence in the record. (*Id.*) After carefully considering that evidence, and appropriately weighing the value of the opinions and testimony contained in the record, ALJ Rice found that Plaintiff had the RFC to perform light work with "occasional postural activities," "must avoid moderate exposure to working hazards such as moving machinery and unprotected heights," and "is also limited to detailed but not complex tasks." (*Id.*) In reaching this RFC determination, ALJ Rice found that Plaintiff did not have the RFC to perform his past relevant work, relying on VE Dennison's testimony that Plaintiff was unable to work as a makeup artist. (R. 25.)

At step five, ALJ Rice properly found that a significant number of jobs existed in the national economy that Plaintiff could perform. (R. 26.) She considered plaintiff's age, education, work experience, and RFC along with the Medical-Vocational Guidelines listed in 20 C.F.R. Part 404, Subpart P, Appendix 2. (*Id.*) ALJ Rice presented VE Dennison with various hypotheticals relating to Plaintiff's limitations and relied on the VE's testimony in making a finding of "not disabled." (*Id.*) VE Dennison identified several jobs that an individual could perform with Plaintiff's age, education, work experience, and RFC, including an unskilled garment sorter (DOT 222.687-014), office helper (DOT 239.567-010), and marker (DOT 209.587-034). (*Id.*) ALJ Rice found that this testimony was consistent with the Dictionary of Occupational Titles and properly determined that Plaintiff was not disabled, as defined in the Act, at any time from his alleged onset date through his date last insured. (R. 26-27.)

On appeal, Plaintiff claims that ALJ Rice: 1) improperly determined that Plaintiff's mental impairments were not severe; 2) made RFC findings that were not based on substantial evidence; 3) "impermissibly became a medical expert by" mischaracterizing Plaintiff's hearing testimony;

11

and 4) failed to consider Plaintiff's need for a cane and "pain and subjective complaints." (D.E. 11 at 14-25.) These arguments are without merit. ALJ Rice's findings are supported by substantial evidence, and she was free to conclude non-disability based on Plaintiff's limited treatment, lack of treatment notes, and Plaintiff's testimony.

First, Plaintiff argues that the ALJ "entirely dismissed [his] allegations of depression and anxiety as 'non-severe' at Step 2 without adequate explanation." (D.E. 11 at 15.) This argument is baseless. ALJ Rice thoroughly evaluated Plaintiff's limitations in the areas of 1) understanding, remembering, or applying information, 2) interacting with others, 3) concentration, persistence, and pace, and 4) adapting or managing oneself. (R. 17-20.) After doing so, ALJ Rice found that Plaintiff had only minor or no limitations in each of the four areas. (R. 19.)

Plaintiff's argument that ALJ Rice's findings were not based on substantial evidence is equally unpersuasive. Plaintiff specifically argues that the ALJ "summarily dismiss[ed] and entirely discredit[ed] Dr. Chaudry's opinions." (D.E. 11 at 18.) However, an ALJ is free to give a treating physician's opinion less weight or even reject it, so long as the ALJ clearly explains her reasons.[6] *Salles*, 229 F. App'x at 148; *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Here, ALJ Rice thoroughly evaluated Dr. Chaudry's opinions, but gave them little weight, finding them conclusory in nature and lacking in support. (R. 23-24.) As such, ALJ Rice appropriately considered and weighed the medical evidence before her in reaching her findings.[7]

---

[6] This is the case unless the opinion was designated as having "controlling weight." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 148 (3d Cir. 2007). An opinion will have "controlling weight" only if well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with the record's substantial evidence. (*Id.*)

[7] In addition, an ALJ is not required to discuss every "tidbit of evidence included in the record." *Hur v. Barhart*, 94 F. App'x 130, 133 (3d Cir. 2004); *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (explaining that an ALJ is not required to refer to every treatment note in an extensive medical record). Further, simply because an ALJ does not cite to specific evidence does not establish that the ALJ did not consider it. *Phillips v. Barnhart*, 91 F. App'x 775, 780 n.7 (3d Cir. 2004). ALJ Rice reached her decision "[a]fter careful consideration of all the evidence" and "of the entire record." (R. 15, 20.) When an ALJ states all evidence has been considered, "absent evidence to the contrary,

Plaintiff also alleges that ALJ Rice improperly "became a medical expert by interpreting Plaintiff's ability to drive occasionally as demonstrating that he is not disabled." (D.E. 11 at 19.) Plaintiff's position is without merit. ALJ Rice did not find that Plaintiff was not disabled because he could drive; rather, her decision noted that Plaintiff's ability to drive indicated that he had, at most, a mild limitation in his ability to concentrate, persist or maintain pace. (R. 19.) This was an appropriate conclusion made in conjunction with a thorough review of Plaintiff's medical records. *See, e.g.*, *Siple v. Colvin*, Civ. No. 15-570, 2017 WL 58955, at *8 (D. Del. Jan. 5, 2017) (noting that a claimant's ability to drive a car shows concentration and persistence).

Lastly, Plaintiff contends the ALJ failed to consider his need for a cane and his "pain and subjective complaints." (D.E. 11 at 21-25.) This final argument also fails. ALJ Rice correctly identified the two-step process required to evaluate a claimant's subjective complaints. (*See* R. 21.) ALJ Rice then proceeded to engage in an extensive review and analysis of Plaintiff's alleged impairments and limitations, noting that they were not entirely consistent with the medical evidence and did not preclude him from engaging in an array of activities of daily living. (*Id.*). Further, the ALJ gave sufficient reasoning, stating that after careful consideration of the entire record, the medical history was "not necessarily consistent with [Plaintiff's] allegations of disability." (R. 22.) ALJ Rice acknowledged that Plaintiff did experience pain attributable to his fibromyalgia and degenerative disc disease and that those subjective complaints would limit him to light work. (*Id.*) Because the ALJ appropriately considered the entire record, Plaintiff has failed to provide a basis upon which this Court will reverse or remand ALJ Rice's decision.

---

we take her at her word." *Akrigg v. Comm'r of Soc. Sec.*, Civ. No. 17-0237, 2018 WL 1378699, at *9 (D.N.J. Mar. 19, 2018) (quoting *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)).

## IV.     CONCLUSION

Because this Court finds that ALJ Rice's factual findings were supported by substantial credible evidence in the record and that her legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

*s/ Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:  Clerk
cc:      Parties